IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| PAYRANGE INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | C.A. 6:24-cv-00339 |
| | § | |
| CARD CONCEPTS INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**
**<u>AND DEMAND FOR JURY TRIAL</u>**

1. Pursuant to Section 1338 of Title 28 of the United States Code, Plaintiff PayRange Inc. ("Plaintiff" or "PayRange") alleges for its Complaint against Defendant Card Concepts Inc. ("CCI") ("CCI" or "Defendant"), on personal knowledge and information and belief as noted.

2. This Complaint arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action under 35 U.S.C. § 271 et seq., 28 U.S.C. §§ 1331 and 1338(a).

**<u>THE PARTIES</u>**

3. PayRange is a Tennessee corporation with its principal place of business at 9600 NE Cascades Pkwy, Suite 280, Portland, OR 97220.

4. On information and belief, CCI is an Illinois company with employees who work both from home as well as from offices located at 302 South Stewart Ave., Addison, IL 60101.

5. PayRange's acclaimed technology enables its customers to upgrade a coin-operated unattended retail machine into a state-of-the-art mobile payment solution with a small module, called "BluKey." PayRange's mobile app communicates with BluKey to enable mobile

transactions. The United States Patent & Trademark Office ("USPTO") awarded PayRange a portfolio of patents for its innovations.

6. PayRange's patent portfolio is prominently identified on its website pursuant to PayRange's virtual patent marking practices: https://payrange.com/patents/

7. PayRange found success in the laundry and vending industries, attracting significant customers including WASH Multifamily Laundry Systems ("WASH"). Unfortunately, competitors took notice and copied PayRange's technology. As a result, PayRange initiated litigation against a major competitor (KioSoft) and subsequently against KioSoft's major customer (CSC). In response, KioSoft and CSC challenged the validity of PayRange's patents before the USPTO. PayRange prevailed with confirmed claims in every USPTO challenge that proceeded to a Final Written Decision.

8. On January 31, 2024, PayRange and KioSoft issued a press release announcing a settlement. KioSoft's President, Charles Lee, is quoted:

> *"While we had challenged the PayRange patents vigorously, the Patent Trial and Appeal Board (PTAB) upheld the PayRange patents and, although we disagreed with the result, we must now accept that PayRange has valid claims," stated Charles Lee, President of KioSoft. "We respect the technologies that have helped the self-service industry thrive; and we look forward to continuing to lead innovation and development by providing best-in-class service to our customers with this fully-licensed technology, without any further legal distractions."*

9. KioSoft agreed to license PayRange's technology for an amount that could exceed $62 million over a ten-year period, dependent on outcomes with a base license of $40 million.

10. In April 2024, on the heels of its settlement with KioSoft, PayRange also resolved its patent infringement dispute with KioSoft's customer CSC.

11. In May 2024, PayRange reached a patent licensing deal with WASH, one of the largest providers of laundry facilities in the United States. The agreement licenses PayRange's

patents for use with the WASH-Connect Mobile Payment App and will continue for the term of PayRange's patents. In the press release, WASH's CEO, Jim Gimeson stated:

> *"We're a privately held company founded in 1947 and we hold dear our reputation for integrity and ethical practices," says WASH CEO Jim Gimeson. "As operators, we hold a deep respect for the innovations PayRange has brought to elevate the laundry industry."*

12. PayRange hoped that its other competitors would respect its intellectual property. PayRange hoped that its competitors would, like KioSoft, accept that PayRange had valid patent claims. PayRange hoped that its other competitors would, like, WASH, act with integrity and adhere to ethical practices.

13. On March 21, 2024, PayRange sent CCI a letter providing notice of its potential infringement and inviting licensing discussions.

14. PayRange filed this action to protect its innovations and stop CCI's patent infringement.

**JURISDICTION AND VENUE**

15. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 et seq.

16. This Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

17. Upon information and belief, CCI has infringed PayRange's patent-in-suit in this District by, among other things, engaging in infringing conduct within and directed at, or from, this District. CCI has purposefully and voluntarily placed one or more of its infringing products, as described below, into the stream of commerce with the expectation that these infringing products will be used in this District. CCI's infringing products have been and continue to be used in this District.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b). CCI has a regular and established place of business in this District. For example, CCI has one or more employee working in this District. On information and belief, an individual by the name of Adam Arafat is CCI's Remote Product Support Technician and he resides in Harker Heights, Texas. Mr. Arafat's LinkedIn profile identifies his job responsibilities as:

> *[P]roviding diagnostic and troubleshooting support to end users with technical issues of varying complexity involving computer hardware and software, network connectivity, related peripheral equipment, and proprietary hardware. Escalating support requests as necessary. Monitor and maintain ticket management system, CRM data, SLA agreements and inventory records.*

*See* **Exhibit 2**.

19. On information and belief, based on his job responsibilities, Mr. Arafat conducts his work responsibilities from his residence in this District. On information and belief, Mr. Arafat has been working remotely for CCI at this place for over three years, meaning that it is regular and established. On information and belief, based on Mr. Arafat's job responsibilities, he would necessarily possess property of CCI at his residence in this District and would send and/or receive equipment from customers or distributors. As such, CCI was holding out to the relevant public that it had a presence in this District. On information and belief, Mr. Arafat has personal knowledge regarding the design and operation of the accused products.

20. Further, CCI previously registered to do business in Texas, as shown below:

Franchise Tax Details ×

Franchise Search Results | Public Information Report

As of : 06/22/2024 23:13:41

**This page is valid for most business transactions but is not sufficient for filings with the Secretary of State**
Obtain a certification for filings with the Secretary of State.

| CARD CONCEPTS INC. | |
|---|---|
| Texas Taxpayer Number | 32081446315 |
| Mailing Address | 302 S STEWART AVE ADDISON, IL 60101-3310 |
| Right to Transact Business in Texas | FORFEITED File missing reports, information reports and/or payments |
| State of Formation | IL |
| Effective SOS Registration Date | Not Registered |
| Texas SOS File Number | Not Registered |
| Registered Agent Name | ADAM ARAFAT |
| Registered Office Street Address | 2008 RAIN DANCE LOOP HARKER HEIGHTS, TX 76548 |

*See* **Exhibit 3.**

21. As shown, CCI had appointed Mr. Arafat as its registered agent in Texas. On information and belief, CCI's registered office address in Texas was Mr. Arafat's residence.

**PAYRANGE'S PATENT-IN-SUIT**

22. To protect its unique and innovative technologies, PayRange filed a provisional patent application (No. 61/917,936) on December 18, 2013. Several patents issued based on this original application, including the patent-in-suit, a summarized below.

23. On January 12, 2021, the USPTO issued U.S. Patent No. 10,891,608 (the "'608 patent"), titled "METHOD AND SYSTEM FOR AN OFFLINE-PAYMENT OPERATED MACHINE TO ACCEPT ELECTRONIC PAYMENTS." A true and correct copy of the '608 patent is attached hereto as **Exhibit 1.**

## COUNT I
## INFRINGEMENT OF THE '608 PATENT

24. PayRange realleges and incorporates the allegations of the preceding paragraphs of this complaint as if fully set forth herein.

25. PayRange is the assignee and owner of all right, title, and interest in and to the '608 patent. PayRange has the exclusive right to make, use, sell, and offer to sell any product embodying the '608 patent throughout the United States, and to import any product embodying the '608 patent into the United States.

26. A significant advantage of the '608 patent is the ability to emulate an analog signal generated by the coin receiving switch of the offline payment-operated machine. Another advantage was receiving a wireless request via the short-range wireless transceiver from a mobile device. A further advantage is causing an offline payment-operated machine to initiate the requested cashless operation by issuing the first number of electrical pulses. These advantages were not routine, well-understood or conventional.

27. Upon information and belief, CCI has and is infringing at least claim 1 of the '608 patent in this District and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling and/or offering for sale payment devices, including FasCard, covered by one or more claims of the '608 patent to the injury of PayRange. CCI is directly infringing, literally infringing, and/or infringing the '608 patent under the

doctrine of equivalents. CCI is thus liable for infringement of the ’608 patent pursuant to 35 U.S.C. § 271(a).

28. When placed into operation by CCI or CCI’s users, CCI’s infringing products infringe at least claim 1 of the ’608 patent. They include a payment module (FasCard) for an offline payment-operated machine (*e.g.,* laundry machine) including a coin receiving switch, the payment module comprising: a short-range wireless transceiver (*e.g.*, NFC) configured to communicate with one or more mobile devices; one or more processors; a first interface module configured to output to a control unit of the offline payment-operated machine one or more electrical pulses, each of the one or more electrical pulses emulating an analog signal generated by the coin receiving switch of the offline payment-operated machine in response to insertion of a single coin of a predetermined type in the offline payment-operated machine; and memory (*e.g.*, Flash memory) with one or more programs for execution by the one or more processors, the one or more programs including instructions for: storing, in the memory of the payment module, a number of the electrical pulses that must be received by the control unit to initiate an operation of the offline payment operating machine; receiving a wireless request via the short-range wireless transceiver from a respective mobile device of the one or more mobile devices to initiate a cashless operation of the offline-payment operated machine; and in response to the wireless request: determining a first number of electrical pulses to output via the first interface module to the control unit of the offline payment-operated machine in order to initiate the requested cashless operation of the offline payment-operated machine; causing the offline payment-operated machine to initiate the requested cashless operation by issuing the first number of electrical pulses to the control unit via the first interface module; and sending operation

information corresponding to the initiated operation of the offline payment-operated machine to the respective mobile device via the short-range wireless transceiver.

29. To the extent CCI payment devices (including FasCard), without more, do not directly infringe at least claim 1 of the ’608 patent, CCI actively encourages their business partners, end-users and/or customers to use CCI payment devices in an infringing manner. CCI encourages infringement with a specific intent to cause its business partners and customers to infringe. CCI’s acts thus constitute active inducement of patent infringement in violation of 35 U.S.C. § 271(b).

30. In addition, CCI contributes to infringement of the same under 35 U.S.C. § 271(c) inasmuch as the infringing products offered for sale and sold by CCI are each a component of a patented machine or an apparatus used in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the ’608 patent.

31. CCI’s direct infringement, contributory infringement, and inducement of infringement have irreparably harmed PayRange.

32. Upon information and belief, CCI will continue to infringe the ’608 patent unless enjoined.

33. Pursuant to 35 U.S.C. § 284, PayRange is entitled to damages adequate to compensate for the infringement. PayRange has complied with its patent marking obligations including by virtually marking its patents through the following URL: https://payrange.com/patents/.

34. At the time of the filing of this Complaint, CCI became aware of the ’608 patent and its infringement thereof. Despite this knowledge, CCI has continued to manufacture, use,

sell, offer for sale, and/or import products that infringe upon the ’608 patent, without any reasonable basis to believe that it had any right to do so. CCI’s continued infringing activities after the filing of the Original Complaint constitute willful and deliberate disregard of PayRange’s patent rights.

35. This case is “exceptional” within the meaning of 35 U.S.C. § 285, and PayRange is entitled to an award of attorneys’ fees.

## REQUEST FOR RELIEF

WHEREFORE, PayRange requests that the Court find in its favor and against CCI, and that the Court grant PayRange the following relief:

a. Judgment that CCI infringes the patent-in-suit;

b. Judgment that CCI is jointly and severally liable for infringement of the patent-in-suit.

c. That PayRange be granted with injunctive relief against CCI and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, to prevent the recurrence of the infringing activities complained of herein, including an injunction against further installations of infringing payment modules, discontinue providing service to installed modules practicing infringing technology, and for all further proper injunctive relief pursuant to 35 U.S.C. § 283;

d. Judgment that CCI account for and pay to PayRange all damages and costs incurred by PayRange, caused by CCI’s infringing activities complained of herein;

e. Judgment that CCI willfully infringed and increase the damages award to PayRange up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

f. That PayRange be granted pre-judgment and post-judgment interest on the damages;

g. That this Court declare this an exceptional case and award PayRange reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

h. That PayRange be granted such other and further relief as the Court may deem just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of this action.

Dated: September 17, 2024

Respectfully submitted,

By: */s/ Ryan R. Smith*

James C. Yoon (Admitted to Practice WDTX;
CA State Bar No. 177155)
Ryan R. Smith (Admitted to Practice WDTX;
CA State Bar No. 229323)
Jamie Y. Otto (PHV forthcoming)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Tel: (650) 493-9300

*Attorneys for Plaintiff PayRange Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

Dated: September 17, 2024

*/s/ Ryan R. Smith*
Ryan R. Smith